WILLIAM PAUL EBLEN,  )
                     )
    Petitioner,      )
                     )
v.                   )   3:05-cv-16
                     )   *Jordan*
                     )
JACK MORGAN, Warden, )
                     )
    Respondent.      )

## MEMORANDUM

This is a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed by petitioner William Paul Eblen ("Eblen"). The matter is before the court on the respondent's answer to the petition and Eblen's response. For the following reasons, the petition for the writ of habeas corpus will be **DENIED** and this action **DISMISSED WITH PREJUDICE**.

I.    Standard of Review

A state prisoner is entitled to habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. Under Rule 8 of the Rules Governing Section 2254 Cases In The United States

District Courts, the court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If no hearing is required, the district judge is to dispose of the case as justice dictates. If the record shows conclusively that Eblen is not entitled to relief under § 2254, there is no need for an evidentiary hearing and the petition should be denied. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

II.  Factual Background

The respondent has provided the court with copies of the relevant documents as to Eblen's direct appeal; Eblen did not file a petition for post-conviction relief. [Court File No. 10, Notice of Filing Documents, Addenda 1-10]. Eblen was convicted by a jury, in the Circuit Court of Knox County, Tennessee, of two counts of aggravated rape and one count of aggravated kidnapping. He was sentenced to concurrent terms of 24 years each on the rape convictions, and to a concurrent term of 11 years for the kidnapping. The judgments of conviction were affirmed on direct appeal. *State v. Eblen*, No. E2002-01221-CCA-R3-CD, 2003 WL 22225636 (Tenn. Crim. App. Sept. 26, 2003) [Addendum 8], *perm. app. denied, id.* (Tenn. March 8, 2004) [Addendum 10].

The Tennessee Court of Criminal Appeals summarized the evidence against Eblen as follows:

> The eighteen-year-old victim, C.P., testified that she left her apartment to go to the Breezeway market at about 8:45 on the evening of August 31, 1998. She stated that she drove her car, and followed the car driven by the

2

sister of her friend and neighbor, Melissa Tapp. Melissa was in the back seat of the car driven by her sister. C.P. explained that Melissa's car went through the drive-thru window of the market first; C.P. was behind in her car. No one else was with C.P. Melissa's car drove off, and C.P. pulled up to the window. She placed her order and was driving away when she heard a man who had been standing nearby yell at her that she had dropped some money. She stopped, and the man walked up to the passenger side of her car. C.P. testified that the man got into her car, pulled a gun, and told her to drive.

C.P. testified that the man had been wearing a green shirt and brown khaki shorts. The man told her not to look at him. He took off his shirt and wrapped it around his head, leaving only his eyes showing. He told C.P. where to drive. When they reached a back road, the man told C.P. to stop and get out of the car. The man followed C.P. and made her go to the front of the car. He told her to lay down on the ground; she did so. The man then got on top of her, pulled a knife, and sliced open the front of her dress. The man then told C.P. to take off her underwear, which she did. C.P. was on her menstrual period and told the man that she was wearing a tampon. The man told her to remove it; she did. The man then pulled his pants down and raped her vaginally. When C.P. tried to push the man away, he struck her three times in the face. The rape lasted for several minutes, until C.P.'s attacker ejaculated.

The victim drove home and told Melissa Tapp and Melissa's sister that she had been raped. Melissa flagged down a policeman, and an ambulance arrived shortly thereafter to transport the victim to the hospital.

On cross-examination, the victim admitted that she had called the police about her boyfriend, Tony Norris, the night before (August 30, 1998). She swore out a complaint stating that Mr. Norris had shoved her around, put her on the floor, and punched her in the lip. Later in the trial, she stated that she did not remember testifying at the preliminary hearing that she had seen another man talking with the Defendant at the Breezeway market while she was at the window.

Dr. Timothy Gunter examined the victim at the emergency room and collected evidence for a rape kit. He testified that the victim arrived at the emergency room at 12:24 a.m. The victim told him that she had been sexually assaulted. Dr. Gunter testified that the victim had a hematoma (bruising and swelling) on her right cheek. This appeared to be a new injury, that is, having occurred within the previous two hours. Dr. Gunter testified that the hematoma on the victim's cheek was consistent with having been inflicted by a fist. Dr.

Gunter also testified that he observed irritation on the victim's labia, which is usually caused by friction. There was also some blood from the victim's menstrual period. Dr. Gunter testified that C.P.'s rectal area was "diffusely swollen, the whole rectal area, and there was a small tear." He explained that the area "appeared to be traumatized," that the tear was "fresh," and that the injuries were most likely caused by some type of penetration trauma.

On cross-examination, Dr. Gunter stated that he had examined C.P.'s back and saw no cuts or scrapes. He admitted that rectal tears can be caused by bowel movements. He also testified that the victim's facial injuries did not appear to have been inflicted on the previous night, August 30.

Knoxville Police Department Officer Larry Franklin Vineyard spoke briefly with the victim at the hospital. He noticed a small cut to her upper lip and redness in her face. He described these injuries as "consistent with injuries that occurred immediately after an assault." He subsequently visited the Breezeway market and spoke there with a Mr. Mullins. Mr. Mullins told Officer Vineyard that the Defendant had been at the market the night before and advised him of one of the Defendant's relatives who lived nearby. Officer Vineyard spoke with the relative and asked him to have the Defendant contact him. Officer Vineyard later heard from the Defendant's mother and visited her house to speak with the Defendant. Officer Vineyard spoke with the Defendant late in the morning on September 1, and collected the clothes which the Defendant told him he had been wearing the night before. Officer Vineyard described these clothes as a blue shirt and aqua pants. Officer Vineyard also prepared a photographic line-up containing six photographs, including one of the Defendant. When the victim was shown this line-up, she identified the Defendant as her assailant in "less than probably five seconds."

Subsequent laboratory testing revealed the presence of sperm in swabs taken from the victim's vaginal and rectal areas. DNA testing revealed that the sperm matched the DNA profile obtained from a sample of the Defendant's blood, to a statistical probability of "one in 3.29 quintillion."

Melissa Tapp testified that she had known the victim about two years and that they had been best friends. She testified that she saw no marks on C.P.'s face at the time they all left to go to the store. She also testified that she had seen a man standing near the Breezeway drive-thru window at the time she was there in the car ahead of the victim's. The man was wearing beige shorts and a green t-shirt. The next time she saw the victim was at the apartment. She heard a car horn blowing like someone was "laying on it." She went out about

4

five minutes later and found the victim in her car. She described the victim as "[h]er eye was black, and her dress was torn." Ms. Tapp testified that the victim was crying, upset, looked terrified, and was saying she had been raped. Ms. Tapp flagged down a police officer.

Officer Mark Fortner was the patrol officer flagged down by Ms. Tapp. He spoke with the victim at the apartment. He testified that she had some red marks on her face and "was pretty distraught." He described the marks on her face as appearing "pretty fresh." C.P. gave him a ten-dollar bill and told him that her attacker had given it to her.

Officer Mark Waggoner collected evidence at the crime scene and also at the hospital. He took photographs of the victim and took into custody the rape kit and the victim's clothes. He testified that the victim had a split upper lip and bruising on her right cheek and right eye.

Officer James L. Miller, Jr. testified on behalf of the Defendant. He explained that he had reported to the victim's residence on the night of August 30, 1998, on a domestic call. The victim told him that she had been in an argument with her boyfriend, Tony Norris, and that he had struck her with his fist. Officer Miller testified that he observed the victim to have a split lower lip.

Michael Ralph Mullins also testified on behalf of the Defendant. He testified that he was at the Breezeway market at the same time as the Defendant on the night of August 31. Mr. Mullins testified that he saw a car pull up to the window, and the Defendant asked the woman driving if she would give him a ride to the Pilot. Mr. Mullins testified that the female responded, "sure," and leaned over and opened the car door from the inside. The Defendant got in and they drove off. Mr. Mulllins described the woman as "friendly, and laughing, and cutting up, and going on." He described the Defendant's clothing at that time as a white t-shirt and baggy white shorts. Mr. Mullins stated that it was between eight and nine o'clock in the evening when he observed this event.

The Defendant also testified. He stated that he had known the victim since 1996 because she and his wife were friends. The Defendant and his wife lived next door to Terry Norris' mother. The foursome visited with each other frequently. He saw the victim at the Breezeway market on the night in question between 10:30 and 10:45. He stated that the car in front of the victim's was Judy Cooper's, and he did not see Melissa Tapp that night. The Defendant

5

asked the victim if she would drive him home in exchange for gas money. She said yes, and he got in her car. They drove to a gas station and pulled into the parking lot. There, they commenced talking and flirting. The victim was complaining about her boyfriend, Terry Norris. They then drove to a nearby park. The Defendant stated that he did not ask the victim to drop him off at his mother's because he "wanted to do more," that he "felt [he] had a chance to do more," and that the "opportunity was-was there." At the park, they got out and talked for about five minutes. They then "started to kiss each other" and "proceeded to have sex." The Defendant did not accost the victim with a gun or a knife, and had neither with him. The victim did not protest or ask the Defendant to stop. When they finished, they returned to the victim's car and drove toward the Defendant's mother's house. There, they stopped in an alley behind the house and had sex again.

On cross-examination, the Defendant stated that both episodes of sex were vaginal. He explained that a total of about thirty minutes elapsed between the time he got in the victim's car and they had sex the first time. The first episode lasted about fifteen minutes. It took them two minutes to get to the alley, at which point they talked for a couple of minutes and then had the second episode of intercourse. This episode lasted five minutes. The victim then dropped the Defendant off behind his house and left.

The Defendant examined the victim's dress, which had earlier been admitted into evidence, and acknowledged the tears in the fabric. He stated that the dress had not been like that when he left the victim. He also stated that he did not know how the victim's rectal area came to be injured. He testified that he had not noticed any marks or bruises or puffiness on her face while they were together. He stated that they had kissed while having sex and that the victim had not complained about a hurt lip. He testified that he gave the victim ten dollars for gas.

The Defendant acknowledged that Officer Vineyard asked him to give a blood sample. He testified that he refused to give a sample on Officer Vineyard's advice. He also testified that the victim was lying, but that he didn't "have a clue" as to why.

Officer Vineyard testified on rebuttal and denied having advised the Defendant to refuse the blood test. He stated that he "encouraged him to take the test" but that the Defendant refused. He also testified that Mr. Mullins told him on the morning after the incident that he had been at the store, saw the

6

> victim drive in, and as she was starting out of the exit, saw the Defendant yell
> at her. The victim stopped, and he saw the Defendant go get in her car.

*Id.*, 2003 WL 22225636 at \*\*1-4 (footnote omitted).

In support of his petition for the writ of habeas corpus, Eblen alleges the following: (1) insufficient evidence to support the conviction; (2) prosecutorial misconduct; and (3) the trial court erred in denying Eblen's motion for writ of error coram nobis. The respondent contends Eblen is not entitled to relief based upon the findings of the Tennessee state courts as to his claim of insufficient evidence, procedural default as to his claims of prosecutorial misconduct, and failure to state a cognizable claim as to his claim that the trial court erred in denying the motion for writ of error coram nobis.

III. <u>State Court Findings / Sufficiency of the Evidence</u>

Pursuant to 28 U.S.C. § 2254(d), Eblen may not obtain federal habeas corpus relief with respect to a claim that was adjudicated on the merits in a state court proceeding unless the state court decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law or (2) was not reasonably supported by the evidence presented to the state court. In addition, findings of fact by a state court are presumed correct and Eblen must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). Eblen has failed to rebut, by clear and convincing evidence, the findings of the state courts and they will be presumed correct by this court.

7

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), clarified the distinction between a decision "contrary to," and an "unreasonable application of," clearly established Supreme Court law under § 2254(d)(1). A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 413. A state court decision "involves an unreasonable application of clearly established Federal law" only where "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

Eblen alleges that the evidence was not sufficient to support his convictions. He specifically challenges the credibility of the victim and her witness, Melissa Tapp. In a federal habeas corpus proceeding in which a state prisoner challenges the sufficiency of the evidence supporting his conviction, the petitioner "is entitled to a determination whether the record evidence could support a finding of guilt beyond a reasonable doubt." *Moore v. Duckworth*, 443 U.S. 713, 714 (1979). However, the petitioner is entitled to habeas relief only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). *See Brofford v. Marshall*, 751 F.2d 845, 856 (6th Cir. 1985).

When reviewing a jury's verdict under a sufficiency of the evidence standard, a court must consider all the evidence in a light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. at 319. Witness credibility is an issue to be left solely within the province of the jury, *Deel v. Jago*, 967 F.2d 1079, 1086 (6th Cir. 1992); *United States v. Schultz*, 855 F.2d 1217, 1221 (6th Cir. 1988), and substantial deference should be given to the trier of fact. *United States v. Ayotte*, 741 F.2d 865, 867 (6th Cir. 1984). "[T]he federal court sitting in habeas should not attempt to substitute its own opinion for that of the jury which convicted the petitioner." *York v. Tate*, 858 F.2d 322, 329 (6th Cir. 1988). A conviction should be affirmed if *any* rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Bourjaily*, 781 F.2d 539, 544 (6th Cir. 1986), *aff'd*, 483 U.S. 171 (1987).

Eblen raised his claim of insufficiency of the evidence on direct appeal. In considering Eblen's claim that the evidence was not sufficient to support the conviction, the Tennessee Court of Criminal Appeals noted the standard is that set forth in *Jackson v. Virginia*. *State v. Eblen*, 2003 WL 22225636 at *5. The appellate court also noted as follows:

> [S]hould the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts.

*Id.* at *6 (internal citations omitted).

The Tennessee Court of Criminal Appeals first considered Eblen's convictions for aggravated rape, noting that, under Tennessee law, aggravated rape "is defined as the 'unlawful sexual penetration of a victim by the defendant ... accompanied by ... [f]orce or coercion ... used to accomplish the act and the defendant is armed with a weapon[.]'" *Id.* (quoting Tenn. Code Ann. § 39-13-502(a)(1)).

> Here, the victim testified that the Defendant was armed with both a gun and a knife, and used both to threaten her. The Defendant unlawfully sexually penetrated the victim on two separate occasions, both of which were accomplished by force or coercion. Medical proof corroborated the victim's testimony. The Defendant acknowledged having had sex with the victim. The Defendant's argument that the evidence is not sufficient rests on the claim that the State's proof is not credible. This Court does not address issues of credibility of witnesses; the jury does. The evidence being more than sufficient to support the Defendant's two convictions of aggravated rape, this issue is without merit.

*Id.*

The appellate court then considered Eblen's aggravated kidnapping conviction. The court noted that aggravated kidnapping "is committed upon the false imprisonment of another, to facilitate the commission of any felony." *Id.* (citing Tenn. Code Ann. § 39-13-304(a)(1)). The court further noted that "'[a] person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty.'" *Id.* (quoting Tenn. Code Ann. § 39-13-302(a)). The court then concluded the evidence was sufficient to support the conviction for aggravated kidnapping.

> The proof in this case, taken in the light most favorable to the State, established that the Defendant falsely imprisoned the victim within her own

10

> car in order to commit the felony of aggravated rape. The proof being more
> than sufficient to support the Defendant's conviction of this charge, this issue
> is without merit.

*Id*.

As noted earlier by this court, Eblen has failed to rebut, by clear and convincing evidence, the factual findings of the Tennessee Court of Criminal Appeals and they are presumed correct by this court. This court has reviewed the transcript of Eblen's trial [Addendum 2, Transcript of the Evidence, vol. 1-5], the transcript of his sentencing [Addendum 3, Transcript of the Evidence, vol. 6], and the transcript of the hearing on the motion for new trial and for writ of error coram nobis [Addendum 4, Transcript of the Evidence, vol. 7], and finds the decision by the Tennessee Court of Criminal Appeals is supported in the record. This court thus concludes that the appellate court's determination that the evidence was sufficient to support the convictions for two counts of aggravated rape and one count of aggravated kidnapping was neither contrary to, nor did it involve an unreasonable application of, federal law as established by the U.S. Supreme Court in *Jackson v. Virginia*. Accordingly, Eblen is not entitled to habeas relief on this issue.

IV.   Procedural Default / Prosecutorial Misconduct

The doctrine of procedural default is an extension of the exhaustion doctrine. A state prisoner's petition for a writ of habeas corpus cannot be granted by a federal court unless the petitioner has exhausted his available state court remedies. 28 U.S.C. § 2254. This rule has

11

been interpreted by the Supreme Court as one of total exhaustion. *Rose v. Lundy*, 455 U.S. 509 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *Picard v. Connor*, 404 U.S. 270 (1971). *See also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (Exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review.").

Eblen cannot now file a state petition for post-conviction relief. Tenn. Code Ann. § 40-30-102(a) (one-year statute of limitation for filing a post-conviction petition). Accordingly, he has no remedy available to him in the Tennessee state courts for challenging his conviction and is deemed to have exhausted his state remedies.

It is well established that a criminal defendant who fails to comply with state procedural rules which require the timely presentation of constitutional claims waives the right to federal habeas corpus review of those claims "absent a showing of cause for the non-compliance and some showing of actual prejudice resulting from the alleged constitutional violation." *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977). *Accord Engle v. Isaac*, 456 U.S. 107, 129 (1982) ("We reaffirm, therefore, that any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief.").

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).

Eblen claims that during closing argument the prosecution (1) improperly shifted the burden of proof to the defense and (2) improperly commented on Eblen's request for an attorney during questioning by the police. Eblen raised these claims on direct appeal.

The Tennessee Court of Criminal Appeals summarized the first claim as follows:

> The defense theory offered at trial was that the victim willingly engaged in sex with the Defendant, but claimed rape in order to avoid reprisal by her violent boyfriend. During defense counsel's examination of witnesses, the points were made that it was possible that the victim had torn her own dress, and that the injury to her rectum had been caused by a bowel movement. During initial closing argument, the prosecutor countered this theory with the following:
>
>> What else are they trying to get you to swallow? Her dress wasn't like that when she left [the Defendant]. Well, how did it get this way, [Defendant]? It is clearly ripped, folks. No question about that. Are we to believe, as well, the suggestion or the innuendo that is made that she ripped her own dress to make it look better? I suppose she cut her own rectum to make that look better, too, and created the swelling by penetrating something into her rectum to make that look better.
>
> ...
>
>> Pardon my French. The tear in her rectum. I suppose she did that on the way home from the alley over in Western Heights, as well. And maybe while she was doing that, she made her rectum swell up like the doctor described to you. What did the doctor tell you that was consistent with? Trauma, penetration. *And they can't explain that. You get [defense counsel] to stand up here and explain that to you. He is going*

13

> *to have the opportunity. I challenge him right now. How did that happen?*

*State v. Eblen*, 2003 WL 22225636 at **6-7 (emphasis in original).

The second claim of prosecutorial misconduct was also addressed by the appellate court:

> Later in his initial closing argument, the prosecutor stated the following:
>
>> When [Officer] Vineyard first got up to [the Defendant's] place the next day, we have heard on and on and on about what a cooperative sort [the Defendant] has been. Of course, then we find out here just about half an hour ago that this man, who is trying to convince you that he just has consensual sex with [C.P.] some twelve hours before, *when this officer gets up there to talk to him, what does he do? He wants to talk to a lawyer.*

*Id*. at *7 (emphasis in original).

With respect to both claims of prosecutorial misconduct, the defense made no contemporaneous objection to the prosecutor's remarks; in addition, the defense failed to raise the issues in a timely motion for new trial. For that reason, the Tennessee Court of Criminal Appeals found the claims were waived. *Id*. Nevertheless, the appellate court considered whether the challenged remarks constituted plain error and determined they did not. *Id*. at **7-9.

The respondent contends that Eblen procedurally defaulted his claims of prosecutorial misconduct by failing to object at trial and by failing to file a timely motion for new trial. This court agrees.

14

The Sixth Circuit has "held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice." *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) (citations omitted). The same would hold true for Tennessee's contemporaneous objection rule. In addition, "we view a state appellate court's review for plain error as the enforcement of a procedural default." *Id.*; *see also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) ("Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules."); *Scott v. Mitchell*, 209 F.3d 854, 877 (6th Cir. 2000) ("It is enough that the court specifically held that the claims were waived; the court's alternative holding that there was no plain error 'does not require us to disregard the state court's finding of procedural bar.'") (quoting *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998)).

Eblen argues that his procedural default should be excused because he is "actually innocent" of the crimes for which he was convicted, under the standard set forth in *Schlup v. Delo*, 513 U.S. 298 (1995), and thus it would be a fundamental miscarriage of justice to allow his convictions to stand. In *Schlup*, the Supreme Court established a "gateway standard for obtaining federal review despite a state procedural default." *House v. Bell*, 547 U.S. 518, 555 (2006). Under *Schlup*, a habeas petitioner must "show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Schlup v. Delo*, 513 at 327 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). *See also Mitchell v. Rees*, 114 F.3d 571, 579 n.12 (6th Cir. 1997) ("Briefly stated, a fundamental miscarriage of justice occurs when the petitioner submits new evidence showing that a constitutional violation has

15

probably resulted in a conviction of one who is actually innocent.") (citations omitted). In addition, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. at 536-37 (quoting *Schlup*, 513 U.S. at 327).

Eblen relies on evidence first raised during his sentencing and during the hearing on the motion for new trial and for writ of error coram nobis. During his sentencing hearing, Eblen called Robert Lamb as a witness; Mr. Lamb testified that he briefly dated the victim some ten months after the rape, which was before Eblen's trial, and that the victim told him the rape did not occur. According to Mr. Lamb, the victim said she only accused Eblen of rape because she was afraid of her boyfriend. Mr. Lamb met Eblen in the Knox County Jail after Eblen's conviction. [Addendum 3, Transcript of the Evidence, vol. 6, pp. 3-15].

During the hearing on the motion for new trial and motion for writ of error coram nobis, Eblen called as witnesses Robert Byrd and his mother, Wilma Byrd. Mr. Byrd testified that, several years after the rape but before Eblen's conviction, he and the victim dated for several months. Mr. Bryd also testified that the victim told him the sex she had with Eblen was consensual and that she only accused Eblen of rape to keep her boyfriend from beating her up. Mr. Byrd met Eblen after Eblen was incarcerated in the West Tennessee State Penitentiary. [Addendum 4, Transcript of the Evidence, vol. 7, pp. 13-41]. Wilma Byrd testified that she heard the victim say "the boy didn't rape her, that she was testifying to that in fear of her boyfriend -- her ex-boyfriend." [*Id.* at 44-45].

The victim testified at the hearing on the motion for new trial and motion for writ of error coram nobis. She admitted dating Robert Lamb and Robert Byrd, but denied telling either of them or Wilma Byrd that she had lied about the rape. The victim reiterated that Eblen did in fact rape her. [*Id.* at 55-73].

The trial court denied the motion for new trial and the motion for writ of error coram nobis. [Addendum 1, Technical Record of Appeal, Order, pp. 150-53]. The trial court first noted that Eblen's defense counsel diligently attempted to locate the new witnesses prior to trial, but could not do so. [*Id.* at 153]. Nevertheless, the court found as follows:

> The court is not convinced, however, that a material witness, in this case, [the victim], testified falsely, or that the new testimony presented by Mr. Lamb, Mr. Byrd, and Ms. Bell is credible. Mr. Lamb and Mr. Byrd are both former boyfriends of the victim, [...], and were incarcerated with the defendant, Mr. Eblen following his conviction in this case in May 2001. Their testimony, considered together with all the other facts and circumstances of this case, is simply not credible. The testimony of Ms. Bell, while more troubling, also lacks credibility sufficient to justify a new trial in this case. When the court considers the entire record in this case, including the victim's testimony, the physical and medical evidence, and the testimony of corroborating witnesses, the court is satisfied that a proper verdict was reached.

[*Id.*].

The Tennessee Court of Criminal Appeals reviewed the trial court's decision under an abuse of discretion standard. Finding none, the appellate court affirmed. *State v. Eblen*, 2003 WL 22225636 at *10.

Having read the transcript of the trial and the transcript of the hearing on the motion for writ of error coram nobis, this court agrees with the trial court. As previously noted, the evidence at trial was sufficient to support Eblen's convictions. With respect to the testimony

17

of Robert Lamb and Robert Byrd, both came forward with their evidence only after meeting Eblen in either jail or prison. Eblen has failed to make a credible showing that he is actually innocent of the crime for which he was convicted and he cannot excuse his procedural default on that basis.

V.     Cognizable Claim / Writ of Error Coram Nobis

Eblen claims that the trial court erred in denying his motion for writ of error coram nobis, in violation of the standard set forth in Tenn. Code Ann. § 40-26-105. That section of the Tennessee Code Annotated makes available to convicted criminal defendants a writ of error coram nobis whereby a criminal defendant may challenge his conviction based upon errors that could not have been litigated at trial.

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

*Id*. § 40-26-105(b). Eblen also refers to *State v. Mixon*, 983 S.W. 2d 661 (Tenn. 1999), in which the Tennessee Supreme Court held that a writ of error coram nobis can apply to newly discovered recanted testimony and further discussed the procedures a trial court should employ in considering a motion for writ of error coram nobis. *Id*. at 672-73.

18

A federal habeas petitioner may obtain relief if he is "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Eblen's allegation that the trial court erred in denying the motion for writ of error coram nobis involves the alleged failure of the trial judge to comply with state law requirements. As such, "it is not cognizable in a federal habeas corpus proceeding." *Spalla v. Foltz*, 788 F.2d 400, 405 (6th Cir. 1986). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("we reemphasize that it is not the province of a federal habeas court to reexamine state court determinations on state law questions"); *Lewis v. Jeffers*, 497 U.S. 764, 779 (1990) ("federal habeas corpus relief does not lie for errors of state law"); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Sinistaj v. Burt*, 66 F.3d 804, 807 (6th Cir. 1995) ("Errors of state law alone cannot form the basis of relief under federal habeas corpus.").

VI.  Conclusion

The petition for habeas corpus relief will be **DENIED** and this action **DISMISSED**. Rule 4 of the Rules Governing Section 2254 Cases In The United States District Courts. Eblen having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253(c); Rule 22(b) of the Federal Rules of Appellate Procedure. The court **CERTIFIES** that any appeal from this

19

action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure. The court will further **DENY** Eblen leave to proceed *in forma pauperis* on appeal.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Leon Jordan
United States District Judge
